Thank you, Judge. May it please the Court, Albert Chao for the petitioner, Yi Guo Li. Your Honors, this is an asylum case in which the petitioner was arrested on two separate occasions for the practice of the Chinese spiritual movement known as Falun Gong. I guess start right there and tell us there's a discrepancy in the record. He testified to once, and then another time he testified to twice being arrested. Yes, Your Honor. What happened was this was at a Credible Fear interview. And what happened was that the first interview he had mentioned the first arrest and some of the details regarding that arrest. And then there was a follow-up interview to clarify some of the things that he had said in the first interview. And then he had mentioned correctly a second arrest. And when asked why he did not mention this the first time, he stated, well, because this was a short matter and I had forgotten about that. But what I think is important about these interviews in terms of the credibility finding is that the BIA took issue with, I guess, two separate inconsistencies. What I believe is at issue with this Court today is the nature of the interviews that are being conducted. This Court has found on several occasions that these types of interviews are short, non-detailed, conclusory, and lack follow-up questions, and therefore are unreliable in determining credibility. And this was done in Singh v. INS, 292 Fed Third 1017, 9th Circuit, 2002. Now, as an example, if you want to take the interview that was relied upon, it is a total of 11 pages that was relied upon by the BIA. Now, in these 11 pages, six of those pages were just simply a worksheet for the officer, and one of those pages was an interview on something that was completely collateral to the asylum claim. So what we're left with is four total pages of testimony for two separate asylum claims, short, non-detailed, conclusory. As an example, one of the inconsistencies cited was that the respondent had stated in his state asylum application, as well as his hearing before the immigration judge, there was a beating in which he described himself being beaten with fists and shot with an electric baton. And the BIA had stated, wait a minute, you didn't say this during your first interview with the asylum officer during your credible offender interview. But I believe that the petitioner did state that. He stated about his first arrest, and I quote, regarding the police, they surrounded us, arrested us, slapped us, and hit us. That was his statement. No follow-up questions were asked after that. Very logical to ask someone, how were you hit? What were you hit with? How were you arrested or surrounded? But there were no follow-up questions here. The petitioner in this matter was not given the opportunity to specifically state how he was hit or arrested. Let's turn to his statement of reasons why he wanted to have asylum. Yes, Your Honor. And I believe you're referring to the matter in which he stated the reason that he left China was based upon another incident involving his uncle. Is that the one Your Honor is referring to? Well, that. And then he said he wanted to go to work in his cousin's restaurant. And then kind of belatedly, he says, yeah, I was a member of the Tao, which I guess is the background gong. Yes, Your Honor. And I believe, again, this Court has addressed before in Singh v. Ilchert that there are mixed motives. That mixed motives can establish asylum. An asylum applicant may have many motives, and there may be many reasons for persecution. And so long as one of those reasons is based upon one of the five immemorial grounds that are protected, then he is eligible for asylum. What do we do about his line about his age? In my opinion, it is unclear about what had happened during that interview. That was at the border patrol. And if you want to talk about short and non-detail, that was really just a very cursory. And I believe that the petitioner himself had stated that he had come out with a mistruth himself. And this was not something that was brought out after a rigorous cross-examination. He had admitted that he was told by some of the people to state certain things, and he admitted to the officer that he had made a mistake and that he shouldn't have said that. And so I believe that he was himself being forthcoming in the interview without any prompting by the officer himself. I believe the petitioner in this case was attempting to get to the truth of his statement and had been, I guess, confused by people that he had been detained with. And really what we have here is his credibility is being questioned solely upon the credible interview that was given during his detention. There were no inconsistencies cited between his testimony in court internally. There were no inconsistencies cited between his testimony in court and his written application. The sole reason for any adverse credibility finding in this case is based completely upon his testimony in court and the credible interview that is short, conclusory, not detailed. And that is the issue that we have here. So was he beaten up? How many times was he beaten up? Well, he was arrested a total of four times. One time was just because he apparently had gotten into a fight with somebody. So there were three arrests in which he was arrested and he was beat. And two of those were based upon Falun Gong. And one of those arrests was based upon an incident where his uncle left him with a suitcase that apparently contained some contraband. He testified that the one he starts off with, at least in the credible fear interview, is the first one with the looking for his uncle and the drug. He was doing drugs, right? Correct. And he says, isn't that when he says he was beaten with the ‑‑ taken to the police station and they put books on his stomach? Correct. That happened twice? Where they used the book technique? No. That only happened once, Your Honor. And, again, this is what happens when we have these short and nondetailed interviews is that he was, you know, if you take into account a totality of the circumstances, he was ‑‑ I'm sorry. Short, nondetailed interviews. This is a transcript, wasn't it? It is a transcript, Your Honor. But my ‑‑ but I believe the point is, is that these ‑‑ the credible fear interview and also the border interview is designed merely to state whether or not this applicant has a possibility of obtaining asylum. It's not designed to elicit all of the details of an asylum. I understand that. You know, guess what? We've been doing these cases a lot. We know the law. I'm talking about the facts of this case. Yes, Your Honor. Okay? The facts of this case is he has a Mandarin speaking, is that not correct? Interrogator? Yes. Okay. And so there's no claim that there was any miscommunication here. This is Chinese Mandarin to Chinese Mandarin, right? That is with the officer at border inspection, yes. The credible fear interview was done with the help of an interpreter. With an interpreter. Okay. But the interpreter was qualified, spoke his language, all of that. Yes, Your Honor. Okay. And so he talks about the ‑‑ they beat ‑‑ the whole night they tortured me. How did they torture you? They beat me up. They put books on my stomach. Okay. Now, that has nothing to do with how short or long the interview is. That's his statement about what they did. He's pretty clear about that. Now, doesn't he switch and say later that, oh, the books on the stomach was in a different circumstance? Yes. And that is consistent with what is written in his asylum application. And essentially because he was arrested on three separate occasions and beaten on three separate occasions and considering that he has ‑‑ he didn't finish the sixth grade in education, I mean, it's easy for him to get confused in a setting like that and switch them around, I guess so to speak, when you have that many arrests and that many times that you were beaten and how many ‑‑ who hit you with what and everything like that. And that is what I'm saying is that in an asylum hearing before the immigration judge, he has an opportunity to clarify some of those statements that he previously made and to, you know, and to essentially flesh out all of the details of his asylum claim. And that is what he did in front of the immigration judge. And that is why he is consistent with his written application when he had the time to clear his thoughts and to write down what it is that he is seeking asylum for. Okay. And I see ‑‑ Why don't you reserve the minute? Yes, Your Honor. Thank you. Fine. Thank you. May it please the Court, my name is Lauren Bassett and I represent the respondent, the United States Attorney General. Here substantial record evidence supports the agency's adverse credibility finding and ultimate denial of the petitioner's request for asylum. Mr. Lee had at least five opportunities to present his claim. He was interviewed at the border before the Customs and Border Protection agent. He had two different credible fear interviews to clear up mistakes that were inconsistencies in the first one in his asylum application and in his testimony before the immigration judge. And every time, his story changed. He offered differing accounts of why he came to the United States, including to make money because of Falun Gong practice, because his wife wanted to have more children, because of problems with his uncle. He was inconsistent about his birth date. First he said he was born in 1981, and then later he said, no, I was lying. Then he said, my friends told me to say I was younger. Then later when he was asked about that, he said, no, I was just nervous. Then he said, no, I didn't lie. In these settings prior to before the immigration judge, these were non-adversarial settings. They were just to hear his story. The questions were short and direct. There was no cross-examination, and he still was giving inconsistent testimony. When did he first inject Falun Gong as one of his reasons? He mentioned Taoism at the border, and then later said that that was Falun Gong. But in terms of an incident, he said very briefly that he was arrested for several days, but didn't give any more detail on that. And at that time, he said that he was arrested – I'm sorry, his uncle left a suitcase at his house, and that the uncle was arrested, and that he was not arrested. But I'm just asking about Falun Gong. I mean, it's not inconsistent for him to have more than one reason to leave China, particularly if his uncle is a drug dealer. No, Your Honor, that's correct. But his emphasis on why he came sort of shifted to potentially what he thought would get him asylum. He was inconsistent about testifying about the uncle. First that his uncle was arrested. That was at the border interview. Then in the credible fear interviews, he said his uncle was not home, he was arrested, and that is when he was detained and the police put books on his stomach and beat him. I'm just trying to sort this out in sequence because I'm looking at AR-302, which is the record of sworn statement and proceedings. Which one is it? Calexico. Is that the credible fear at the border? Well, the border interview is the one at 302 to 307. Yeah. Is that the first one? Yes. Okay, well, the first one he's saying, for what purpose would you go to Texas to work for money at my cousin's restaurant? Is that your only purpose of coming all the way from Italy? Yes, this is my only purpose to work at my cousin's restaurant. Then why did you leave China? Because I am a religion member. What religion? Taoism. Taoism. And then the government said that our Taoist meetings were illegal. They arrested me for several days about April of 2004. Taoism has fallen gone. So I'm not sure there's a material inconsistency there. He may have come from Italy to Texas because he that's why he left Italy for Texas, but why he left China was because he did it because of his religion. That's pretty clear. Well, the inconsistency is primary reason at that point. Yes, Your Honor. Within the border agent's testimony, the inconsistency isn't about why he left or there's not a fallen gone inconsistency there. It's that he said that he was a fallen gone practitioner, and he mentions an arrest, and he doesn't give any details. No, but you started out by saying, summarizing all the inconsistencies, you said he gave all these variable reasons why he came. Yes, Your Honor. And I'm just saying, well, yes, but the one primary one from the get-go was fallen gone. Well, Your Honor, he does say that, but then he shifts to say, no, it was really my uncle. He's the main problem. And he offers sort of varying reasons of importance. Where does he say that? That's, I believe, at the end of, around 307, at the end of the interview. He says, Taoism is a big problem, but most importantly, it's my uncle. That is a big problem. He's a criminal. And this is sort of the first, the uncle in this situation, he just says the uncle was arrested, and then the inconsistencies come out later as in the credible fear interview, suddenly he was arrested because of the uncle. And fallen gone is mentioned, but very briefly, that he was at a friend's house, he was slapped and hit and put in detention for 24 hours. The police didn't ask him anything, and then he was released. Then in the next credible fear interview, he mentions a second arrest for fallen gone that he didn't mention before. And then in his asylum application and his testimony, suddenly the books were used during the fallen gone arrest, only the first one, or the second one, it's unclear, but only one time. And then he says, no, books were never put on his stomach in regards to the arrest involving his uncle. Basically, his story is so inconsistent that the immigration judge couldn't figure out what was going on. It changed every time he talked about it. And moreover, the petitioner even had an opportunity to clear up these inconsistencies because here the immigration judge issued a decision without an explicit adverse credibility finding, and it was remanded for that explicit finding, and he was given an opportunity to present further evidence. They didn't even want to come to the hearing. They waived appearance. They took no opportunity to present additional evidence. So even with that opportunity to clear up these inconsistencies, nothing was done. Also, this is a post-Real ID Act case, so we're looking at the totality of the circumstances, including the petitioner's demeanor, his candor, his responsiveness, the inherent plausibility, all these internal inconsistencies. He was inconsistent about how many times he was arrested. Then he said four, and then he said, no, I was only – I'm sorry, that he was detained three times, four times. It was very – everything, you know, his birth date, his reasons for coming. Yeah, you've gone over that. Do you have any – you mentioned demeanor. Does the I.J. in this one – you've had several, and I can't remember – did the I.J. make a demeanor finding in this case? I believe he does mention the demeanor as one of the reasons. I don't have the page number, but yeah, I believe that I.J. does mention. But we don't put much weight on this demeanor stuff because people from different cultures react very differently, and so we want some very concrete – Yes, Your Honor. Well, certainly demeanor was not the only reason for the adverse credibility finding. It was mostly all these inconsistencies to the point where the immigration judge had to call in the Customs and Border Protection officer to testify about what happened because suddenly Mr. Lee, before the judge, said that he didn't understand the interpreter and there was a very strong accent and that the interview was not read back to him. Even though we have a native-born Mandarin-speaking agent doing the interview, that Mr. Lee's initials are on the pages, but the Customs and Border agent said he read back the pages to him and the immigration judge found the agent to be credible. Here, Mr. Lee, unfortunately, the standard here is just whether you're compelled to find that he was telling the truth. And here, with varying stories, how could you be compelled? I mean, a reasonable fact finder couldn't be compelled to find him credible if you don't even know which story to believe. I'm troubled by the demeanor thing. Judge Fletcher is correct, but you cite demeanor. It's like you rattled off these other things at the beginning. I'm trying to understand the record in this case. Where does the court, the IJ, say anything about demeanor? She said, she sums up, or he, I can't remember, signs up, the evidence fails to demonstrate it has the requisite candor, responsiveness and consistency necessary to find him credible. I don't, I'm not saying it's not there. I just don't find it or have it marked. I'm sorry, I don't have the page number for you at this moment. Well, you're relying on it. So that's why I thought you might know where it was. So in any event, well, I'm not going to. We don't want to waste time searching for the record. The point is that here, the immigration judge looked at the totality of the circumstances. I know, counsel. But, you know, we get so many of these cases. We rely on counsel to point us to the record, not to make generalizations. Just as I said to your counsel for the petitioner, we know the law. We see these cases. What we're relying on you all is to point us to the facts of the case and to just throw out generalized statements that we look at the totality of the circumstances and you cite demeanor, then I'm supposed to take away from that that demeanor was one of the grounds on which the IJ ruled. And some of these IJs are quite careful. They explain. This witness took two minutes to answer this question. He's rolling his eyes. That's a demeanor finding that can be very helpful. And we've so said in some of our opinions. But for you to stand up here and say that there's demeanor, if it's true, that's fine. But then be able to back it up. Yes, sir. I actually believe it's in the testimony part before he calls in the border protection agent. I believe he says he's questioning the demeanor and that he can't get to the bottom of this, and that's why he's calling the customs and border protection agent in. I don't know if it's in the decision. I'll have to look through it. But I know that he does reference that at some point. But the main point here was the inconsistencies. And in the five different opportunities to present his claim, there were too many inconsistencies for the immigration judge to find the petitioner credible. And here substantial record evidence supports that finding. Thank you. Thank you. We rest on the brief. Your Honors, under the totality of the circumstances, the BIA in this case cited only two inconsistencies. And both of those inconsistencies were based solely upon the difference in testimony between the in-court testimony and the credible theory interview. There are no other inconsistencies cited by the BIA. And the BIA did not expressly adopt the I.J.'s opinion. The BIA made its own opinion in this case. And, again, only two inconsistencies, one clearly of which there is not an inconsistency. There were merely not enough follow-up questions asked to elicit the proper information to get the consistent testimony that I guess the BIA was looking for in this case. And the only other inconsistency cited was the part about having the book placed on his chest and being beaten. And I believe I responded earlier that because he had three arrests that he was confused about what had happened. Thank you. Thank you. All right, counsel, thank you for the argument. The case is submitted. Thank you.
judges: Fletcher B. , Fisher, Gould